McRAE, Justice,
dissenting:
¶ 38. The physician/patient privilege recognizes both an individual’s interest in avoiding disclosure of personal matters and the providing physician’s interest in maintaining the trust of his patient. The subpoena and search warrant issued in this case were both so broad as to unfairly encroach upon the statutory privilege. Is this Court now going to allow a daily subpoena for all medical records on possible suspected crimes? Because the majority incorrectly interprets requirements of hospitals under Miss.Code Ann. § 45-9-31,1 dissent.
¶ 39. This is a clear case of the State going on a fishing expedition to gather information. This writer does not disagree with the majority’s assertion that public policy dictates the release of certain medical information when criminal activity is implicated. Nevertheless, when such releases are made, the State must be careful not to totally ignore statutory notions of privilege and privacy. This case is a perfect example of what can happen when the State does ignore these notions.
¶ 40. The State did not even adhere to Miss.Code Ann. § 45-9-31, because it sought information about people who had suffered cuts or lacerations, which includes more than just “knifings.” It need not be argued in detail here, but suffice it to say that cuts and lacerations can result from impact in vehicular accidents, recreational activities, or household mishaps. This is exactly the reason that the Legislature chose to use the word “knifings” in Miss.Code Ann. § 45-9-31; crimes involving the use of deadly weapons do warrant special treatment, and it is reasonable to require health care providers to report, upon reasonable belief and inspection, to the authorities those who are treated as a possible result of such activity. The majority’s conclusion that “knifing” is substantially the same as “cuts or lacerations” is flawed. Giving the word “knifing” such a broad interpretation and allowing the State to use a subpoena and search warrant like the ones in this case would result in the release of extraneous confidential informa *563 tion regarding all of the patients treated in a variety of situations that may have resulted in cuts or lacerations. This Court should regard the use of the word “knifing” in the statute to be related to wounds inflicted by the misuse of a knife or other similar object. The Legislature provided no blanket exception to the physician/patient privilege, and this Court should not effectively apply one.
¶ 41. Further, the statute requires an exercise of reasonable judgment by the physician, nurse or hospital employeé when reporting a patient to the police department or sheriff. Miss.Code Ann. § 45-9-31 does not require that medical records of every patient be turned over to the State; it only requires the reporting of specific individuals to the authorities. The statute also implies that if a physician, nurse, or hospital employee provides medical information about patients to the police under the statute, the determination reached is presumed to be reasonable. Without a showing 'by the State that the hospital in this case acted unreasonably in choosing not to report information to the police, it must be assumed that the hospital acted properly. The majority basically shows no faith that health care providers can act and have acted in accord with the requirements of Miss.Code Ann. § 45-9-31.
¶ 42. The caveats noted in the majority’s treatment of this case also must be considered. Pursuant to Miss.Code Ann. § 45-9-31, hospitals are required to provide certain medical information to police. The appellee does not argue that this statutory requirement encroaches upon the physician/patient privilege. Accordingly, there is no need to redact information as a result of disclosure pursuant to statute. Rather, it is simply a matter of trusting hospitals and health care providers to follow the statute. In addition, while the majority suggests that disclosed medical records be redacted of patients’ personal information, the majority does not make clear who will be privy to the information released by hospitals. Without implementing the proper safeguards, broad dissemination of this medical information could implicate constitutionally protected privacy rights. This Court should consider more closely the possible adverse consequences to the patients that might flow from such a disclosure, especially in relation to those patients who are in no way related to any criminal activity.
¶43. Finally, it must also be noted that there remains a question as to establishment of probable cause here. As the majority notes, the tests to determine the source of blood on the bottle had not returned from the Mississippi Crime Lab before the grand jury subpoena of the hospital’s medical records or before the search warrant. Absent this preliminary showing of probable cause, neither the grand jury subpoena nor the search warrant for medical records satisfies the requirements of the Fourth Amendment.
¶ 44. It is for the above stated reasons that I respectfully dissent. I would affirm the circuit court below.
SULLIVAN, P.J., and BANKS, J., join this opinion.